648 So.2d 440 (1994)
Gary L. GODAIR
v.
PLACE VENDOME CORPORATION OF AMERICA, V. Rae Phillips, Sam Recile, Sam Essmeier and Jack Thornton.
No. 93 CA 1818.
Court of Appeal of Louisiana, First Circuit.
December 22, 1994.
Rehearing Denied February 2, 1995.
*441 Stanford O. Bardwell, Jr., Baton Rouge, for plaintiff-appellee, Gary L. Godair.
Leslie Leavoy, Jr., DeRidder, for defendant-appellant, Sam Essmeier.
Mesonie Halley, Jr., Lake Charles, for defendant-appellant, Jack Thornton.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment granting a motion for summary judgment in favor of plaintiff and denying a motion for summary judgment filed by one of the defendants.

FACTS
On or about March 17, 1992, Gary Godair, plaintiff, a DeRidder resident, was approached by Sam Essmeier, also of DeRidder, regarding investment in a project to build a large shopping center at Interstate 10 and Bluebonnet Drive in Baton Rouge, Louisiana, called "Place Vendome." Essmeier furnished to plaintiff certain documents and information booklets reflecting financial information for Place Vendome, discussion of land values and appraisals, market analyses, and biographical information on the principals involved in developing the shopping center project. Plaintiff then had telephone conversations regarding the project with Sam Recile and Jack Thornton.
On March 18, 1992, plaintiff gave Essmeier a cashier's check for $100,000.00 made payable to Place Vendome Corporation of America. In return, plaintiff received from Essmeier a thirty-day promissory note for $200,000.00. Essmeier then delivered the check to Recile in Baton Rouge.
Following plaintiff's investment, he learned of information which caused him to question the validity of the project. On April 2, 1992, plaintiff visited the offices of Place Vendome Corporation of America and tendered the promissory note to Recile. On numerous occasions thereafter, plaintiff again tendered the note and demanded payment thereon. Although the note has matured on its face, plaintiff has not received payment on the note.
On July 28, 1992, plaintiff filed the instant suit for recovery of his investment of $100,000.00 in the project, as well as interest and attorney's fees. Named as defendants in the action are Place Vendome Corporation of America, V. Rae Phillips, Sam Recile, Sam Essmeier, and Jack Thornton.
Plaintiff alleged that the instrument which he received in return for his investment, designated as a "promissory note," is a "security" as defined in LSA-R.S. 51:702(15)(a). Plaintiff also alleged that Recile, Essmeier, and Thornton acted as representatives and authorized salesmen for the securities without being registered with the Office of the Louisiana Commissioner of Securities to sell these securities as required by LSA-R.S. 51:703.[1]
*442 On September 3, 1992, plaintiff filed a motion for preliminary default against Recile and Phillips, and a preliminary default was subsequently entered against them. On September 30, 1992, plaintiff confirmed the default, and a default judgment was entered against Recile and Phillips, awarding plaintiff $100,000.00, plus interest, attorney's fees, and costs.
On January 6, 1993, plaintiff filed a motion for summary judgment against Recile, Essmeier and Thornton.[2] Attached to the motion for summary judgment were the following: affidavit of plaintiff, setting forth information which he had testified to at the confirmation hearing; affidavit of Larry Harper;[3] and affidavit of plaintiff's attorney, Stanford O. Bardwell, Jr., stating that he conducted the confirmation proceedings on September 30, 1992, and listing ten different exhibits which had been filed into evidence during the confirmation hearing. Bardwell's affidavit also indicated that copies of the listed exhibits were attached to the memorandum in support of the motion for summary judgment. On March 22, 1993, Thornton filed a motion for summary judgment against plaintiff.
On April 8, 1993, a hearing was held on both plaintiff's and Thornton's motions for summary judgment. At the beginning of the hearing, plaintiff's attorney indicated that he had introduced into evidence at the confirmation of default hearing a number of exhibits. He then stated that he had attached copies of those same exhibits to his memorandum in support of his motion for summary judgment and that he would like to introduce into evidence at the summary judgment hearing some of those same exhibits. The exhibits, as well as depositions of Essmeier and Thornton, were then admitted into evidence.[4]
At the conclusion of the hearing, the trial judge granted plaintiff's motion for summary judgment against Essmeier, Thornton, and Recile, and denied Thornton's motion for summary judgment against plaintiff. The trial judge gave the following oral reasons for judgment:
Well, [LSA-R.S. 51:] 714 provides that any person who violates [LSA-R.S. 51:] 712(A) of the Louisiana Securities Act is liable to the person buying. And certainly there are material issues of fact in dispute as to who was more involved and what roles they played. But they sold securities, participated in the sale of securities without a license, making false representations; end of story; we've got you; liable under the statute. You don't need to get into the other issues.
On April 13, 1993, the trial judge signed a judgment in favor of plaintiff against Recile, Essmeier, and Thornton, jointly and in solido, for $100,000.00, together with interest, attorney's fees, and costs.[5]
Both Essmeier and Thornton appeal from the adverse judgment. Essmeier assigns the following specifications of error:
1. The trial court erred in granting plaintiff's motion for summary judgment without reviewing all of the evidence filed in the record.
2. The trial court erred in granting plaintiff's motion for summary judgment when it considered information which was not a part of the record.
3. The trial court erred in granting plaintiff's motion for summary judgment as there remain genuine issues of material *443 fact, and plaintiff is not entitled to judgment as a matter of law.
Thornton assigns the following specifications of error:
1. The trial court erred in granting plaintiff's motion for summary judgment without reviewing all of the evidence filed in the record.
2. The trial court erred in granting plaintiff's motion for summary judgment when it considered information which was not a part of the record.
3. The trial court erred in granting plaintiff's motion for summary judgment as there remain genuine issues of material fact, and plaintiff is not entitled to judgment as a matter of law.
4. The trial court erred in imposing strict liability on Essmeier and Thornton pursuant to LSA-R.S. 51:712 and 714 when in fact scienter is a necessary element.
5. The trial court erred in denying Thornton's motion for summary judgment.
6. The trial court erred in denying Thornton's motion for new trial.[6]

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d 1115, 1120 (La.App. 2nd Cir.), writ denied, 587 So.2d 695 (La.1991). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Thompson v. South Central Bell Telephone Company, 411 So.2d 26, 27 (La.1982); Legros v. Norcen Exploration, Inc., 583 So.2d 859, 860 (La.App. 1st Cir.), writs denied, 588 So.2d 101, 109 (La.1991).
A fact is material if its existence is essential to the plaintiff's cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Penalber v. Blount, 550 So.2d 577, 583 (La.1989).
The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. Robertson v. Our Lady of Lake Regional Medical Center, 574 So.2d 381, 384 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La. 1991). To satisfy this burden, the mover must meet a strict standard by showing that it is quite clear as to what the truth is and excludes any real doubt as to the existence of material fact. Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d at 1120. The court must closely scrutinize the papers supporting the position of the mover, while the papers of the party opposing the motion are to be treated indulgently. Ortego v. Ortego, 425 So.2d 1292, 1297 (La.App. 3rd Cir.1982), writ denied, 429 So.2d 147 (La.1983).
Summary judgments are not favored and should be used cautiously and sparingly. Penalber v. Blount, 550 So.2d at 583. In determining whether material facts have in fact been disposed of, any doubt is to be resolved against granting the summary judgment and in favor of trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980). This is true even if grave doubt exists as to a party's ability to establish disputed facts at trial. Equipment, Inc. v. Anderson Petroleum, Inc., 471 So.2d 1068, 1070-71 (La.App. 3rd Cir.1985). Where the trial court is presented with a choice of reasonable inferences to be drawn from the subsidiary facts contained in the affidavits, attached exhibits, and depositions, the reasonable inferences must be viewed in *444 the light most favorable to the party opposing the motion. Jones v. Briley, 593 So.2d 391, 393 (La.App. 1st Cir.1991).
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Sun Belt Constructors, Division MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5th Cir.1988).

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST ESSMEIER
Essmeier contends that the trial court erred in granting plaintiff's motion for summary judgment because genuine issues of material fact exist regarding, among other things, whether Essmeier offered to sell or sold a security to plaintiff in violation of the Louisiana Securities Law, which is set forth in LSA-R.S. 51:701 et seq.
Jurisprudence in the area of Louisiana Securities Law is relatively undeveloped. The law was modeled after the federal system, specifically the Securities Act of 1933 and the Securities Exchange Act of 1934. Ek v. Nationwide Candy Division, Ltd., 403 So.2d 780, 785 (La.App. 3rd Cir.), writ denied, 407 So.2d 732 (La.1981). The central purpose of these laws is to protect investors through the requirement of full disclosure by issuers of securities. Ek v. Nationwide Candy Division, Ltd., 403 So.2d at 785. The Louisiana Securities Law seeks to accomplish this goal by requiring that all securities offered for sale in Louisiana be registered with the Office of the Louisiana Commissioner of Securities unless exempted by statute and that all persons offering to sell or selling such securities be registered with the Office of the Louisiana Commissioner of Securities unless exempted by LSA-R.S. 51:709(1), (2), (6), (7), (8), (9), (11), (12), (13) or (17). LSA-R.S. 51:703 and 51:705.
In the instant case, in order for Essmeier to be liable to plaintiff under the Louisiana Securities Law, it must be established that the promissory note issued to plaintiff is a security and that Essmeier offered to sell or sold the security to plaintiff without being a registered salesman.
1. Was the promissory note a "security"?
LSA-R.S. 51:702 defines "security" as follows:
(15)(a) "Security" means any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; preorganization certificate or subscription; transferable share; investment contract; voting-trust certificate; certificate of deposit for a security; fractional undivided interest in oil, gas, or other mineral rights; any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof); or, in general, any interest or instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. (Emphasis added.)
In Reves v. Ernst & Young, 494 U.S. 56, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990), the Supreme Court set out the definitive test for determining whether a note is a security under the securities laws. The test begins with a presumption that every note is a security; however, the presumption is rebuttable. Reves v. Ernst & Young, 494 U.S. at 64, 110 S.Ct. at 951.
The presumption can be rebutted only if the note in question bears a strong resemblance, in terms of four factors, to certain enumerated categories of instruments: (1) notes delivered in consumer financing; (2) notes secured by a home mortgage; (3) short-term notes secured by a lien on a small business or some of its assets; (4) a note evidencing a character loan to a bank customer; (5) short-term notes secured by an assignment of accounts receivable; (6) a *445 note which simply formalizes an open account debt incurred in the ordinary course of business; (7) notes evidencing loans by commercial banks for current operations. Reves v. Ernst & Young, 494 U.S. at 64, 110 S.Ct. at 951.
In Reves v. Ernst & Young, 494 U.S. at 66, 110 S.Ct. at 951-952, the Court set forth the four factors used in determining if a note bears a strong resemblance to one of the above-listed enumerated notes:
First, we examine the transaction to assess the motivations that would prompt a reasonable seller and buyer to enter into it. If the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate, the instrument is likely to be a security. If the note is exchanged to facilitate the purchase and sale of a minor asset or consumer good, to correct for the seller's cash-flow difficulties, or to advance some other commercial or consumer purpose, on the other hand, the note is less sensibly described as a "security." Second, we examine the "plan of distribution" of the instrument to determine whether it is an instrument in which there is "common trading for speculation or investment." Third, we examine the reasonable expectations of the investing public.... Finally, we examine whether some factor such as the existence of another regulatory scheme significantly reduces the risk of the instrument, thereby rendering application of the Securities Acts unnecessary. (Citations omitted) (Emphasis added).
Based on the foregoing, it is clear that the note issued to plaintiff is a security within the contemplation of LSA-R.S. 51:702(15)(a). The note does not bear a strong resemblance to any of the notes enumerated in Reves. Additionally, the documents submitted in support of plaintiff's motion for summary judgment against Essmeier show that the primary purpose of executing the promissory note to plaintiff was to raise money for the general use of a business enterprise, namely Place Vendome, and that plaintiff's primary interest was in the profit the note was expected to generate. Therefore, we conclude that the trial court properly found the promissory note to be a security within the meaning of LSA-R.S. 51:702(15)(a).
2. Did Essmeier offer to sell or sell the security to plaintiff?
LSA-R.S. 51:703 provides that "[n]o dealer or salesman shall offer for sale or sell any securities within or from this state, except in transactions exempt under R.S. 51:709(1), (2), (6), (7), (8), (9), (11), (12), (13), or (17), unless he is a registered dealer or salesman pursuant to this Section."
It is clear that the transaction involved in the instant case is not exempt under LSA-R.S. 51:709. Therefore, we must determine whether Essmeier offered to sell or sold the security to plaintiff.
"Sale," "sell," "offer to sell," "offer for sale," and "offer" are defined in LSA-R.S. 51:702(13) as follows:
"Sale" or "sell" means and shall include every contract of sale or disposition of a security or interest in a security for value. The term "offer to sell", "offer for sale", or "offer" shall include every attempt or offer to dispose of or solicitation of an offer to buy a security or interest in a security for value. The terms defined in this Paragraph shall not include preliminary negotiations or agreements between an issuer or any person on whose behalf an offering is to be made and any underwriter or among underwriters who are or are to be in privity of contract with an issuer or any person on whose behalf an offering is to be made. Any security given or delivered with or as a bonus on account of any purchase of securities or any other thing shall be conclusively presumed to constitute a part of the subject of such purchase and to have been offered and sold for value. The issue or transfer of a right or privilege, when originally issued or transferred with a security, giving the holder of such security the right to convert such security into another security of the same issuer or of another person, or giving a right to subscribe to another security of the same issuer or of another person, which right *446 cannot be exercised until some future date, shall not be deemed to be an offer or sale of such other security, but the issue or transfer of such other security upon the exercise of such right of conversion or subscription shall be deemed a sale of such other security.
Plaintiff's deposition testimony reveals that, on March 17, 1992, Essmeier met with him, indicating that he was a representative of Place Vendome, seeking investors for the project. Essmeier then showed plaintiff information booklets on the project, including a market analysis, a balance sheet, and profit and loss statements. According to the information, Place Vendome had a land value of $80 million, and the purchase price was $20 million. Plaintiff indicated that Essmeier then asked him to invest in the project, claiming that plaintiff would receive a 100% return on his investment within thirty days, evidenced by a promissory note.
On March 18, 1992, Essmeier entered plaintiff's place of business with two promissory notes, one for $100,000.00 and one for $200,000.00.[7] Plaintiff decided to invest $100,000.00, so he gave Essmeier a cashier's check for that amount and received in return a promissory note for $200,000.00.
According to Essmeier's deposition testimony, he was made aware of the Place Vendome project by two friends, namely Jack Thornton and Johnny Kosper. Thornton and Kosper informed Essmeier that he could earn a twenty percent finder's fee for locating investors for the project. According to Essmeier, he had previously been involved in the sale of stocks, so the prospect interested him, and he pursued it.
Essmeier testified that he became acquainted with Recile on March 13 or 14, 1992. Recile informed Essmeier that there would be a 100% return on the loaned money within thirty days. Recile indicated that he had several tenants virtually committed to leasing space in the shopping center and that the land for the project had already been purchased. Recile stated that he had put up $11,000,000.00 for the purchase and that his wife had put up $9,000,000.00. Recile confirmed that Essmeier would receive a finder's fee for locating additional investors.
Essmeier indicated that, on or about March 16, 1992, he approached plaintiff regarding the proposal, mainly the 100% return on his money within thirty days. Essmeier then passed on to plaintiff the information about the project which he had obtained from Recile, Thornton, and others. Essmeier stated that plaintiff seemed interested and asked that Essmeier send him further information on the project as soon as possible. Essmeier received the information that night and brought it to plaintiff on the following morning, March 17, 1992. On the next day, March 18, 1992, Essmeier went to plaintiff's place of business and picked up from plaintiff a cashier's check for $100,000.00. Essmeier then gave plaintiff a promissory note for $200,000.00. Later that same day, Essmeier delivered plaintiff's check to Recile and was told that he would be paid the finder's fee upon completion of the project.
Essmeier denied that he was a sales representative for Place Vendome, stating that he was only a "finder." It was his understanding that, once he found a person who was interested in investing in the project, he was supposed to "back off" and let Recile handle it from that point.
After reviewing all of the evidence submitted in connection with plaintiff's motion for summary judgment, we conclude that Essmeier "offered to sell" or "sold" the security to plaintiff. This finding is supported by the following facts: (1) he approached plaintiff, stating that he represented Place Vendome; (2) he related to plaintiff all of the information concerning the project and even obtained and delivered to plaintiff additional literature concerning the project; (3) he asked plaintiff to invest in the project; (4) he got Thornton to phone plaintiff to give plaintiff additional information; (5) he went to plaintiff's place of business and received a cashier's check for $100,000.00 from plaintiff; (6) he gave plaintiff a promissory note for $200,000.00 in return for the cashier's check; *447 (7) he delivered plaintiff's check to Recile in Baton Rouge. Thus, Essmeier was actively involved in the disposition of the promissory note to plaintiff for value, i.e. $100,000.00, and acted as a salesman of the security. See Reves v. Ernst & Young, 494 U.S. at 64-68, 110 S.Ct. at 951-952.
It is undisputed that Essmeier was not registered as a salesman with the Office of the Louisiana Commissioner of Securities. Therefore, Essmeier clearly was in violation of LSA-R.S. 51:703. Any person who violates LSA-R.S. 51:703 commits an "unlawful practice" under the Louisiana Securities Law. LSA-R.S. 51:712 A(1).[8] Anyone who commits an "unlawful practice" in the sale of a security is liable to the buyer of the security for the amount of the consideration paid, interest, costs, and attorney's fees. LSA-R.S. 51:714 A.[9] Accordingly, Essmeier is liable to plaintiff for the value of the security ($100,000.00), interest, costs, and attorney's fees. Thus, the trial court correctly granted plaintiff's motion for summary judgment against Essmeier.
However, we conclude that the trial court's award of attorney's fees against Essmeier was improper because there was no evidence presented on this issue. Accordingly, the trial court's award of attorney's fees to plaintiff against Essmeier is reversed, and this matter is remanded to the trial court for further proceedings.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST THORNTON
Thornton contends that the trial court erred in granting plaintiff's motion for summary judgment because genuine issues of material fact exist with regard to the following: (1) whether the promissory note issued to plaintiff constitutes a security; and (2) whether Thornton offered to sell or sold the security to plaintiff.[10] Because we have found the note to be a security, we need only address Thornton's second contention, whether he offered to sell or sold a security to plaintiff.
Thornton's deposition testimony reveals that he was made aware of the project on February 20, 1992, by Johnny Kosper. On February 22, 1992, Thornton met with Recile and looked over brochures and information regarding the Place Vendome project. During the meeting, Thornton decided to invest $100,000.00 and gave Recile a check for that amount. In return, Recile gave Thornton a thirty-day note for $150,000.00, with an assignment of proceeds. Recile indicated to Thornton that the note would be repaid from closing proceeds and that he anticipated that the project would close very soon.
On March 14, 1992, Thornton gave Recile an additional $155,000.00 to bring the project nearer to closing, and Recile gave Thornton a note for $210,000.00. On April 16, 1992, Thornton gave Recile additional funds.
With regard to Thornton's involvement with plaintiff, Thornton testified that, while he was in Florida, he was contacted by Essmeier who informed him that plaintiff wished to speak with Thornton about the project. Specifically, plaintiff wanted Thornton to confirm *448 that he had invested in the project and wanted Thornton's opinion of the project. At Essmeier's request, Thornton phoned plaintiff from Florida on March 17, 1992. During the conversation, plaintiff made various inquiries about the project and asked if Thornton had invested $100,000.00. Thornton confirmed that he had invested that amount in return for a note with assignment of proceeds. Finally, Thornton indicated to plaintiff that he felt the project was a good, safe deal.
Thornton acknowledged that, at Recile's request, he had dropped off information packets about the project to various DeRidder residents, with whom Thornton was not acquainted.
Thornton testified that he received no compensation from Recile or Place Vendome and that his money was never returned. According to Thornton, his relationship with the project was the same as that of plaintiff and other investors, i.e. he invested money in the project and did not receive payment of the note.
Plaintiff's deposition testimony indicates that, when he was approached by Essmeier to invest in the project, he asked if anyone else from the DeRidder area had invested. Essmeier stated that Thornton had invested. According to plaintiff, Essmeier continually related to him that Thornton had invested $100,000.00 and that Thornton had allowed him to reveal this information to plaintiff. Essmeier then asked plaintiff if he would like for Thornton to contact him, and plaintiff stated that he would. On March 17, 1992, Thornton phoned plaintiff, telling him that he had invested $100,000.00, that he had been to Baton Rouge to inspect the site, that he had met with Recile, and that he felt it was a wise investment. Plaintiff testified that his decision to invest was based heavily on his conversation with Thornton as Thornton is a well-respected businessman in the DeRidder area. However, plaintiff indicated that Thornton never represented to him that he was acting on behalf of Place Vendome.
Based on the pleadings, depositions, and affidavits in the record, we conclude that genuine issues of material fact exist with regard to whether Thornton offered to sell or sold the security to plaintiff. Therefore, that part of the trial court judgment granting plaintiff's motion for summary judgment against Thornton is reversed, and this matter is remanded to the trial court for further proceedings.

THORNTON'S MOTION FOR SUMMARY JUDGMENT
Thornton contends that the trial court erred in denying his motion for summary judgment against plaintiff because there are no genuine issues of material fact in dispute with regard to whether he offered to sell or sold a security to plaintiff.
Because we have found that genuine issues of material fact exist with regard to whether Thornton offered to sell or sold the security to plaintiff, we conclude that the trial court correctly denied Thornton's motion for summary judgment.

THORNTON'S MOTION FOR NEW TRIAL
Thornton contends that the trial court erred in denying his motion for new trial. Thornton argues that, in granting plaintiff's motion for summary judgment, the trial court failed to consider all of the evidence in the record and that he also considered evidence which was not a part of the record. Because we review summary judgments de novo, we find it unnecessary to address this issue. Moreover, plaintiff's motion for summary judgment against Thornton has been reversed and, thus, resolved in Thornton's favor.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed as to the award of attorney's fees against Essmeier and as to the granting of plaintiff's motion for summary judgment against Thornton. These matters are remanded to the trial court for further proceedings in accordance with the views expressed herein. In all other respects, the judgment of the trial court is affirmed. Costs of appeal are assessed equally against plaintiff, Essmeier, and Thornton.
*449 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] Plaintiff also requested that a writ of attachment issue against certain property owned by Place Vendome Corporation of America, Recile, and Phillips.
[2] Despite the default judgment against Recile, plaintiff subsequently learned that Recile had filed an answer to his petition on September 29, 1992, prior to the confirmation of default. Therefore, plaintiff proceeded with a motion for summary judgment against Recile.
[3] Larry Harper was another investor allegedly approached by Thornton.
[4] At the hearing on the motion for summary judgment, plaintiff's attorney did not offer the testimony from the confirmation of default hearing, but he stated that plaintiff's affidavit, which had been attached to the motion for summary judgment, "tracks and summarizes" that testimony.
[5] The judgment also maintained the writ of attachment and garnishments which had previously been issued, ordered that the lien and privilege resulting from any attachment and garnishments be recognized, and ordered that the property be sold according to law.
[6] Because we review summary judgments de novo, we find it unnecessary to address Essmeier's and Thornton's first two assignments of error which address the trial court's failure to review all of the evidence in the record and its consideration of evidence outside of the record.
[7] Plaintiff had spoken with Recile the previous evening and had told Recile that he might invest $50,000.00 or $100,000.00.
[8] LSA-R.S. 51:712 A(1), provides, as follows:

A. It shall be unlawful for any person:
(1) To offer to sell or to sell any security in violation of R.S. 51:703, 705, or any rule, regulation or order promulgated or issued by the commissioner under this Part.
[9] LSA-R.S. 51:714, addresses civil liability arising from sales of securities. Subsection A provides as follows:

A. Any person who violates R.S. 51:712(A) shall be liable to the person buying such security, and such buyer may sue in any court to recover the consideration paid in cash or, if such consideration was not paid in cash, the fair value thereof at the time such consideration was paid for the security with interest thereon from the date of payment down to the date of repayment as computed in R.S. 51:714(C)(1), less the amount of any income received thereon, together with all taxable court costs and reasonable attorney's fees, upon the tender, where practicable, of the security at any time before the entry of judgment, or for damages if he no longer owns the security. Damages are the amount which equals the difference between the fair value of the consideration the buyer gave for the security and the fair value of the security at the time the buyer disposed of it, plus interest thereon from the date of payment to the date of repayment as computed in R.S. 51:714(C)(2).
[10] It is undisputed that Thornton was not registered with the Office of the Louisiana Commissioner of Securities.