PERRYSBURG TOWNSHIP, Appellant,

v.

CITY OF ROSSFORD et al., Appellees.

Perrysburg Township, Appellant,

v.

Rossford Arena Amphitheater Authority, Appellee.

[Cite as *Perrysburg Twp. v. Rossford,* 149 Ohio App.3d 645, 2002-Ohio-5498.]

Court of Appeals of Ohio,
Sixth District, Wood County.

Nos. WD–02–011 and WD–02–010.

Decided Oct. 11, 2002.

John P. Donahue and Thomas S. Zaremba, for appellant.

Peter R. Silverman, Mark D. Wagoner and Dana R. Ewing, for appellees.

MELVIN L. RESNICK, Judge.

{¶ 1} This cause involves two separate actions brought by appellant, Perrysburg Township, against (1) the city of Rossford, Mark Zuchowski, the Mayor of the city of Rossford and President of the Rossford Arena Amphitheater Authority ("RAAA"), and John Doe Defendants 1–10 ("Action 1"); and (2) the RAAA and

John Doe Defendants 1–10 ("Action 2"). In each case, the trial court granted appellees' motion to dismiss appellant's claims based upon R.C. Chapter 1707, negligent misrepresentation and unjust enrichment for failure to state a claim upon which relief can be granted. In Action 1, the trial court also determined that appellant's claim for breach of contract did not state a claim upon which relief can be granted. The cases were consolidated by this court for the purpose of determination on appeal.

{¶ 2} Appellant's first four assignments of error in both appeals are identical and assert that the common pleas court erred in the following respects in reaching its decision:

{¶ 3} "I. The trial court erred, as a matter of law, by not applying the correct Civ.R. 12(B)(6) legal standard to the determination of appellee's motion to dismiss."

{¶ 4} "II. The trial court erred, as a matter of law, by dismissing counts one through six of appellant's first amended complaint, because claims upon which relief may be granted [are] presented under Ohio securities law."

{¶ 5} "III. The trial court erred, as a matter of law, by dismissing count seven of appellant's first amended complaint, because a claim upon which relief may be granted is presented under the law of negligence."

{¶ 6} "IV. The trial court erred, as a matter of law, by dismissing count eight of appellant's first amended complaint, because an alternative claim upon which relief may be granted is presented under the law of unjust enrichment."

{¶ 7} In Action 1, appellant's Assignment of Error No. V reads:

{¶ 8} "The trial court erred, as a matter of law, by dismissing count nine of appellant's first amended complaint because an alternative claim upon which relief may be granted is presented under the law of contracts."

{¶ 9} In addition, in Action 1 and Action 2, appellant's Assignments of Error Nos. VI and V, respectively, are the same and contend:

{¶ 10} "The trial court erred, as a matter of law, by not providing appellant with a meaningful opportunity to conduct discovery before dismissing appellant's claims against the unidentified John Doe defendants named in the action."

{¶ 11} In its Assignments of Error Nos. I in Actions 1 and 2, appellant contends that the trial court failed to apply the proper standard in dismissing its claims for relief, in particular, in dismissing those claims (Counts 1–6) based upon violations of Ohio securities law, R.C. Chapter 1707.

{¶ 12} In the present case, a written agreement between appellant, the RAAA, and the Rossford/Perrysburg Joint Economic Authority/Port Authority ("Port Authority") is the basis for the claims set forth in Counts 1–6 of appellant's

amended complaints. Appellant insists, inter alia, that the trial court was required to read the agreement in conjunction with the allegations in the complaints to determine whether this instrument "is so clear and unambiguous on its face that the Court can conclude to a certainty that there is no set of facts that could support" appellant's R.C. Chapter 1707 claims.

{¶ 13} Our standard of review on a Civ.R. 12(B)(6) motion to dismiss is de novo. *Hunt v. Marksman Products* (1995), 101 Ohio App.3d 760, 762, 656 N.E.2d 726. A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.* (1992), 65 Ohio St.3d 545, 548, 605 N.E.2d 378. The court will look only to the complaint or, in a proper case, the copy of a written instrument upon which a claim is predicated to determine whether the allegations are legally sufficient to state a claim. Id.; *Slife v. Kundtz Properties* (1974), 40 Ohio App.2d 179, 185–186, 69 O.O.2d 178, 318 N.E.2d 557. A Civ.R. 12(B)(6) motion should be granted "only where the allegations in the complaint show the court to a certainty that the plaintiff can prove no set of facts upon which he might recover," or where the "writing presents an insuperable bar to relief." *Slife v. Kundtz Properties*, 40 Ohio App.2d at 185–186, 69 O.O.2d 178, 318 N.E.2d 557; *Grosko v. Dana Commercial Credit Corp.* (Sept. 1, 2000), Lucas App. No. L–00–1060, 2000 WL 1238890. Dismissals under Civ.R. 12(B)(6) are proper where the language of the writing is clear and unambiguous. *Slife v. Kundtz Properties*, 40 Ohio App.2d at 184, 69 O.O.2d 178, 318 N.E.2d 557.

{¶ 14} Here, in both amended complaints, Counts 1 through 6 characterize the agreement as a "security" within the meaning of R.C. 1707.01(B). Each of the claims in those counts is predicated upon a determination that this agreement is a "security." In applying the standard set forth in *Slife*, the common pleas court did apparently read the agreement in conjunction with the allegations in the complaint, specifically, the court expressly referred to the comments made by Mayor Zuchowski in seeking appellant's financial support for a proposed arena and amphitheater to be constructed and operated by the RAAA. Based upon this application of the law, the court below determined that the agreement was not a security for the purposes of R.C. Chapter 1707. Therefore, the court decided, in essence, that the agreement was plain and unambiguous, thereby presenting an insuperable bar to the claims raised in Counts 1–6 of appellant's amended complaints and/or that appellant failed to offer any set of facts upon which it might recover. Accordingly, appellant's arguments as to the propriety of the standard applied to the Ohio securities law claims are without merit.

{¶ 15} With regard to the remaining counts in each amended complaint, appellant maintains that the trial court focused upon and interpreted selected

portions of the agreement without any reference to the allegations in its amended complaint or the "insuperable bar to relief standard applicable" to appellees' motions to dismiss.

{¶ 16} We must disagree. Our reading of the trial court's judgment entries reveals that the common pleas court granted the motion to dismiss Counts 7, 8, and 9 in Action 1 and Counts 7 and 8 in Action 2 for failure to state a claim upon which relief could be granted based upon the allegations, or lack thereof, in the amended complaints. Thus, for the foregoing reasons, appellant's Assignments of Error Nos. I in both Actions 1 and 2 are found not well taken.

{¶ 17} The facts relevant to our disposition of appellant's Assignments of Error Nos. II in Actions 1 and 2 are taken from the complaints and the agreement entered into by the parties.

{¶ 18} On February 22, 1999, the city of Rossford passed an ordinance authorizing its law director to establish a not-for-profit corporation known as the RAAA. The RAAA is also a "public agency" of the city of Rossford. One of the purposes of the RAAA was to facilitate the development of a sports arena and amphitheater. Upon completion, the RAAA would also own, operate, and maintain the arena and amphitheater.

{¶ 19} As part of obtaining financing for the project, the RAAA entered into a written agreement with Perrysburg Township. Mark Zuchowski, in his capacity as the President of the RAAA, signed the agreement on behalf of the RAAA. The Port Authority is also a signatory on the agreement as the party responsible for remitting assigned funds (contributions and repayments) between the RAAA and appellant.

{¶ 20} Article I of the agreement is titled "CONTRIBUTION BY THE TOWNSHIP AND REPAYMENT BY THE RAAA" and states:

{¶ 21} "A. At the time of the execution and delivery of this Agreement by the parties hereto, the Township hereby agrees to contribute to the Port Authority with respect to the [arena/amphitheater] Project the amount of $5,000,000 to be used for construction costs and related expenses of the Project and, if necessary, debt service on the obligation of the RAAA resulting from such contribution.

{¶ 22} "B. The RAAA hereby agrees to pay the Port Authority, in consideration of the contribution referred to in Paragraph A above, such amount of $5,000,000 on the date which two years from the date of execution and delivery hereof, together with interest thereon a rate of eight per cent per annum, payable semiannually on the dates which are six, twelve, eighteen and twenty-four months after such date of execution and delivery. Such amount to be paid by the RAAA shall be paid from any revenues of the RAAA but shall be subject and subordinate to the pledge of revenues to any first lien bonds issued by the RAAA for

the Project or payable from the proceeds of the Ohio Arts & Sports Facilities grant for Ohio Sports Facilities projects which the RAAA agrees to apply for and pursue diligently. The aforementioned interest payments to be escrowed in advance from this contribution of first lien bonds.

{¶ 23} "C. The parties hereto agree that the RAAA may prepay its obligation under Paragraph B above, in whole or in part, at any time by the payment of the unpaid principal amount thereof together with the interest accrued thereon."

{¶ 24} Appellant's Assignments of Error Nos. II in Actions 1 and 2 maintain, that in reading the face of the agreement in conjunction with the allegations in the amended complaint, provable facts exist to demonstrate that the writing constitutes both an investment contract and a debt security within the meaning of R.C. 1707.01(B).

{¶ 25} Because the city of Rossford is neither an express party to the agreement that is allegedly a "security" under R.C. Chapter 1707 nor can be deemed a party to the agreement by application of the principles of agency, see our disposition of appellant's Assignment of Error No. V in Action 1, infra, it follows that appellant failed to set forth claims upon which relief can be granted in Counts 1–6 (securities law violations) of the complaint in Action 1. Therefore, appellant's Assignment of Error No. II in Action 1 is found not well taken.

{¶ 26} In addition, appellant's Assignment of Error No. II in Action 1 as to Mark Zuchowski is found not well taken. Zuchowski signed the agreement between appellant and the RAAA as its president, i.e., agent. Ohio law provides that an authorized agent who contracts with a third party on behalf of a disclosed principal is not personally liable on the contract. *Grimm v. USLife Credit Life Ins. Co.* (May 19, 1999), Auglaize App. No. 2–98–35, 1999 WL 378376, citing *Oelberg v. Skaggs* (June 4, 1998), Franklin App. No. 97APE10–1383, 1998 WL 292231. In such cases, the contract is entirely the principal's contract, and the agent incurs no liability. Id. Therefore, Counts 1–6 of Action 1 fail to set forth claims against Zuchowski upon which relief can be granted.

{¶ 27} The following discussion is therefore applicable only to Counts 1–6 in Action 2 as raised against the RAAA.

{¶ 28} The purpose of the Ohio Securities Act, generally referred to as Ohio Blue Sky Law, "is to prevent those persons willing to market worthless or unnecessarily risky securities from soliciting the purchasing public without first subjecting themselves and their securities to reasonable licensing and registration requirements designed to protect the public from its own stupidity, gullibility and avariciousness." *Bronaugh v. R. & E. Dredging Co.*(1968), 16 Ohio St.2d 35, 40–41, 45 O.O.2d 321, 242 N.E.2d 572. It is undisputed that the agreement between appellant, the RAAA, and the Port Authority was never registered. Thus, if it is

found to be a security, appellant can raise several claims (Counts 1–6) based upon alleged violations of R.C. Chapter 1707.

{¶ 29} R.C. 1707.01(B) broadly defines a "security" as "any certificate or instrument that represents title to or interest in, or is secured by any lien or charge upon, the capital, assets, profits, property, or credit of any person or of any public or governmental body, subdivision, or agency. It includes * * * promissory notes, * * * evidences of indebtedness, * * * any investment contract, * * * any instrument evidencing a promise or an agreement to pay money * * *."

■ {¶ 30} However, despite the fact that a particular instrument may be included in the list of transactions constituting securities, that inclusion is not conclusive proof that the instrument is a security. *Buemi v. Van Dusen Acceptance Corp.* (Feb. 15, 1979), Cuyahoga App. No. 38371, citing *United Hous. Found., Inc. v. Forman* (1975), 421 U.S. 837, 848–850, 95 S.Ct. 2051, 44 L.Ed.2d 621. Instead, the determination of whether a particular instrument is a security must be made on a case-by-case basis with the "primary emphasis on the economic realities of the instrument." Id. See, also, *State v. Silberberg* (1956), 166 Ohio St. 101, 105, 1 O.O.2d 221, 139 N.E.2d 342.

■ {¶ 31} Even though, as noted previously, appellant argues that the agreement in this cause is an investment contract or debt security, it is clearly a "note" or "promissory note." That is, the agreement is an instrument containing the written promise of the RAAA to pay appellant the definite sum of $5 million dollars plus eight percent interest per annum. See Black's Law Dictionary (7th Ed.1990) 1085 and 1030.

{¶ 32} Our research reveals an absence of Ohio case law on the question of the standard to be employed in determining whether a promissory note can be considered a "security" for the purposes of R.C. Chapter 1707. A majority of Ohio cases have dealt with the issue of whether various instruments were "investment contracts." See, among others, *Silberberg*, supra, and *Roddy v. Alexander* (Oct. 5, 2001), Montgomery App. No. 18503, 2001 WL 1174276 (an interest in real estate); *Brannon v. Rinzler* (1991), 77 Ohio App.3d 749, 603 N.E.2d 1049 (a partnership agreement); *State v. George* (1975), 50 Ohio App.2d 297, 4 O.O.3d 259, 362 N.E.2d 1223 (distributorship agreements); *Emery v. So-Soft of Ohio, Inc.* (1964), 94 Ohio Law Abs. 357, 30 O.O.2d 226, 199 N.E.2d 120 (referral agreement); and *Pride of the Andes v. Soberay* (Jan. 10, 2001), Medina App. 3062–M, 2001 WL 22484 (purchase agreement).

{¶ 33} *Buemi* is closest factually to the instant cause. It involved the determination of whether a participation agreement was a security under R.C. 1707.01(B). The plaintiff-appellant, Joseph Buemi, purchased participation in the

amount of advances made by the defendant-appellee, the Van Dusen Acceptance Corporation, to Buckeye Air Service, Inc. Buemi purchased over 21 percent of the advances for $18,000. Pursuant to the agreement, Buemi's advance was secured by security interests in Buckeye, and he would receive interest at ten percent per annum. After six months, Van Dusen stopped making interest payments; therefore, Buemi filed suit to recover the remainder owed to him under the participation agreement.

{¶ 34} The Cuyahoga County Court of Appeals discussed the "investment contract" tests developed in *Silberberg* and *State v. George,* holding that both were similar in that the factor given primary emphasis was the injured party's "reliance on the expectation of profits from the enterprise." Id. Finding that all that Buemi could expect was the return of his initial advance at ten percent interest, the court held that the participation agreement was not a security. Id.

{¶ 35} The trial court apparently applied the foregoing test in the case under consideration and held that "by its terms the agreement provides for nothing more than a return of the initial principal with a fixed rate of interest. There is lacking any reliance on an expectation of profit and the agreement must therefore fail to qualify as a security." The court declined to accord any weight to Mayor Zuchowski's characterization of the transaction between appellant, the RAAA, and the Port Authority as an "investment."

{¶ 36} However, the trial court failed to recognize that, in 1990, the United States Supreme Court specifically addressed the question of when a note constitutes a security within the meaning of federal statutory law and Arkansas state law. *Reves v. Ernst & Young* (1990), 494 U.S. 56, 110 S.Ct. 945, 108 L.Ed.2d 47. The facts in the *Reves* case were as follows.

{¶ 37} For the purpose of raising money to support its business operations, a farmers cooperative sold uncollateralized and uninsured promissory notes to both cooperative members and nonmembers. The notes were marketed as an "investment program" and paid a higher variable interest rate than did those of most local financial institutions. When the cooperative filed for bankruptcy, the holders of the notes filed suit against Ernst & Young, the firm that audited the cooperative's financial statements, raising claims, among others, that the auditing firm violated both federal and state securities laws. Id. at 59–60, 110 S.Ct. 945, 108 L.Ed.2d 47.

{¶ 38} In the latter part of its decision, the *Reves* court set forth a four-part "economic realities" standard for determining whether a note is a security. See, generally, Branson & Okamoto, The Supreme Court's Literalism and the Definition of "Security" in the State Courts (1993), 50 Wash & Lee L.Rev. 1043, 1065. This standard, commonly called the "family resemblance test" was "uniformly"

adopted by state courts considering this issue. Id. Thus, in our de novo review, we shall apply that test to the note in the instant case.

{¶ 39} Initially, a note is presumed to be a security. *Reves v. Ernst & Young* at 64–65, 110 S.Ct. 945, 108 L.Ed.2d 47; *Bass v. Janney Montgomery Scott* (C.A.6, 2000), 210 F.3d 577, 584; *Godair v. Place Vendome Corp. of Am.* (La.App.1994), 648 So.2d 440, 444. However, this presumption can be rebutted if the note bears a strong resemblance to enumerated categories of instruments including (1) a note secured by a home mortgage; (2) a note delivered in consumer financing; (3) a short-term note held as a lien on a small business or some of its assets; (4) a note evidencing a character loan to a bank customer; (5) a short-term note secured by an assignment of accounts receivable; (6) a note evidencing a loan by a commercial bank; and (7) a note formalizing an open account debt in the ordinary course of business. *Reves v. Ernst & Young,* at 65, 110 S.Ct. 945, 108 L.Ed.2d 47. This flexible test also permits the addition of new instruments to the list. Id. at 64, 110 S.Ct. 945, 108 L.Ed.2d 47.

{¶ 40} In applying the "family resemblance" test, we must examine four factors in connection with the transaction in this cause to determine whether the agreement between the parties is a security. First, we must ascertain the motivations that would lead a seller or a buyer to enter into it. If the seller's motive is to raise money for the general use of a business enterprise and the buyer is interested solely in the expected profits generated by the note, it is more likely to be a security. Id. at 66, 110 S.Ct. 945, 108 L.Ed.2d 47. On the other hand, if the note was exchanged to facilitate the purchase of a minor asset or consumer good, to correct the borrower's cash flow difficulties, or to advance some other commercial or consumer purpose, the note is "less sensibly described as a security." Id.

{¶ 41} Second, we must look at the plan of distribution. If the transaction involves "common trading for speculation or investment," the instrument is more likely to be found a security. Id.

{¶ 42} Third, we explore the reasonable expectations of the investing public. Even when an economic analysis of the circumstances of a particular transaction suggests that a note is not a security, a court will consider it to be such based upon public expectations. Id. at 66–67, 110 S.Ct. 945, 108 L.Ed.2d 47. Fourth, we determine whether some other factor, such as the existence of another regulatory scheme, significantly reduces the risk associated with the note, thus rendering the application of the securities statute unnecessary. Id. at 67, 110 S.Ct. 945, 108 L.Ed.2d 47.

{¶ 43} Pursuant to R.C. 1707.01(B) and *Reves,* the promissory note in the instant case is presumed to be a security. Therefore, this writing does not in and

of itself present an insuperable bar to relief. We therefore turn to the four factors of the family resemblance test.

{¶ 44} Taking the allegations in the complaint as true, as well as examining the agreement between the parties, the RAAA and its agent or agents offered the note for the purpose of obtaining capital for general costs of constructing the project as well as related expenses. Thus, it closely resembles a commercial loan transaction, that is, an effort to raise funds to launch a new enterprise. See *Bass v. Janney Montgomery Scott,* 210 F.3d at 585. Nevertheless, appellant purchased the note to earn interest, a financial benefit which the United States Supreme Court expressly deemed to be a "profit" for the purpose of family resemblance analysis. Id. at 67–68, 110 S.Ct. 945, 108 L.Ed.2d 47, fn. 4. Thus, our consideration of the motivation factor leads to an equally balanced situation in which we cannot definitively state that the note in this case is either likely to be a security or not likely to be a security.

{¶ 45} As to the plans for distribution, there is no indication, either in the agreement or allegations in the complaint, that the agreement/note is subject to "common trading for speculation or investment." Rather, it is a unique, one-on-one agreement between three entities. Therefore, our contemplation of the second factor militates against this particular agreement being a security under R.C. Chapter 1707.

{¶ 46} However, as to the third factor, the focus is whether an objective investing public could reasonably expect the instrument to be protected by securities law. *Manns v. Skolnik* (Ind.App.1996), 666 N.E.2d 1236, 1245. The allegations in appellant's amended complaint indicate that during the bargaining process, the $5 million that is the subject of the note was characterized as an "investment" by the RAAA and its agents. As such, one could conclude that the public might have reasonable expectation that this note is a security protected by securities law. Finally, this is an uncollateralized, uninsured note with no factor, in particular, a regulatory scheme, such as banking regulations, to reduce the risk of the transaction. Appellant's ability to file suit against the RAAA cannot be considered such a scheme. See *Manns v. Skolnik,* 666 N.E.2d at 1246.

{¶ 47} Accordingly, and based upon the foregoing application of the *Reves* four-factor test, we cannot say that the allegations in appellant's complaint show the court to a certainty that the plaintiff can prove no set of facts upon which it might recover under Ohio securities law against the RAAA, or where the writing presents an insuperable bar to such relief. This conclusion does not mean that at some point during the proceedings in the trial court and predicated upon a developed record, this question cannot be raised again. It simply means that the trial court erred in dismissing Counts 1–6 in Action 2 for failing to state a claim

upon which relief could be granted. Accordingly, appellant's Assignment of Error No. II in that suit and as it relates to the RAAA only is found well taken.

{¶ 48} Assignments of Error Nos. III in Actions 1 and 2 challenge the trial court's Civ.R. 12(B)(6) dismissal of appellant's negligent misrepresentation claims. The trial court found that these claims were barred by the "economic loss rule." We disagree.

{¶ 49} In *Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Assn.* (1990), 54 Ohio St.3d 1, 560 N.E.2d 206, the Ohio Supreme Court decreed that "[in] the absence of privity of contract between two disputing parties the general rule is 'there is no * * * duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things.'" Id. at 3, 560 N.E.2d 206, quoting Prosser & Keeton, Law of Torts (5 Ed.1984) 657, Section 92. Thus, the Ohio Supreme Court precluded recovery by a contractor against an architectural firm or design professional for negligent misrepresentation because no privity of contract and no nexus between the parties existed that could substitute for contractual privity. Id. at 8, 560 N.E.2d 206.

{¶ 50} In viewing the facts alleged in the two complaints in the case before us as true, we conclude there was either privity of contract or a sufficient nexus between Mark Zuchowski, the RAAA, and the city of Rossford to distinguish this cause from *Floor Craft Floor Covering*. The RAAA is a party to the contract between the parties and is, therefore, in privity with appellant. Mark Zuchowski, who is the President of the RAAA and the Mayor of the city of Rossford, directly interacted with appellant by participating extensively in the negotiations for the contract as well as signing the contract as the agent of the RAAA. Pursuant to the agreement, the RAAA is not only a nonprofit corporation but also a public agency of the city of Rossford. Further, the arena and amphitheater were to be constructed in the city of Rossford. Therefore, a sufficient nexus to serve as a substitute for privity was alleged against Zuchowski and the city of Rossford. See *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1993), 88 Ohio App.3d 73, 623 N.E.2d 134; *Brocker v. Glitsch Field Serv./NDE, Inc.* (June 30, 1999), Mahoning App. Nos. 97–CA–86 and 97–CA–216, 1999 WL 476254. Therefore, appellant's Assignments of Errors Nos. III in Actions 1 and 2 are found well taken.

{¶ 51} Appellant, in its Assignments of Error Nos. IV in both Actions 1 and 2, contends that the trial court erred in dismissing its claims for unjust enrichment, also known as quantum meruit, for the value of the benefit conferred. *Natl. City Bank v. Fleming* (1981), 2 Ohio App.3d 50, 57, 2 OBR 57, 440 N.E.2d 590. The trial court found that the claims were barred by the written agreement

between appellant, the RAAA, and the Port Authority. Additionally, in Action 1, the court further held that the city of Rossford was not a party to the agreement and that none of the funds provided by appellant went directly to the city of Rossford.

{¶ 52} Civ.R. 8(E)(2) allows a party to set forth two or more statements of a claim alternatively or hypothetically. Under this rule, a party "may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or equitable grounds." As a result, even the use of inconsistent claims is permitted. *Iacono v. Anderson Concrete Corp.* (1975), 42 Ohio St.2d 88, 92, 71 O.O.2d 66, 326 N.E.2d 267. We therefore conclude that simply because the complaint against the RAAA states claims sounding both in contract and unjust enrichment, it does not negate the validity of either claim and does not warrant the dismissal of the unjust enrichment claim against this entity on a Civ.R. 12(B)(6) motion. Cf. *Sammarco v. Anthem Ins. Cos.* (1998), 131 Ohio App.3d 544, 557, 723 N.E.2d 128 (alternate claim for unjust enrichment based upon insurer's termination of health care provider contracts dismissed for failure to state a claim upon which relief can be granted). Therefore, appellant's Assignment of Error No. IV in Action 2 is found well taken.

{¶ 53} However, as to the city of Rossford, a "long-standing principle of Ohio law" is that "all governmental liability ex contractu must be express and must be entered into in the prescribed manner." *Kraft Constr. Co. v. Cuyahoga Cty. Bd. of Commrs.* (1998), 128 Ohio App.3d 33, 44, 713 N.E.2d 1075. Therefore, recovery cannot be had against a municipality either upon a theory of implied contract or quantum meruit. Id. See, also, *G.R. Osterland Co. v. Cleveland* (2000), 140 Ohio App.3d 574, 577, 748 N.E.2d 576 (doctrine of unjust enrichment does not apply to a municipal corporation). Consequently, appellant's Assignment of Error No. IV in Action 1 is found not well taken.

{¶ 54} Assignment of Error No. V in Action 1 asserts that the trial court erred in dismissing its breach-of-contract action against the city of Rossford for failure to state a claim upon which relief could be granted. In Count 9 of its complaint, appellant alleges that the city of Rossford, through its "authorized agents," entered into the agreement with appellant for $5 million at eight percent interest. Appellant insists that because the allegations in the complaint must be taken as true for the purpose of the city's Civ.R. 12(B)(6) motion, the agents, RAAA and Zuchowski, created the contractual obligation for their principal, the city. We disagree.

{¶ 55} First, the allegation is not a factual allegation. It is a legal conclusion. Second, and assuming that the RAAA and/or Zuchowski is an agent of the city of Rossford, the trial court correctly found that when a third party

enters into an contract with an agent alone, that party cannot maintain an action on a contract against the principal. See *Depositors S. & L. Co. v. Gross* (1928), 6 Ohio Law Abs. 606, 1928 WL 3359; *Brown v. N. Am. Energy Programs, Inc.* (Nov. 17, 1983), Cuyahoga App. No. 46749, 1983 WL 2772. "Even if the agent's principal is disclosed, if the agent does not enter into the contract as agent, but as the sole contracting party, the principal is not bound." *Brown v. North American Energy Programs, Inc.,* supra. Here, the RAAA was the sole contracting party with Mark Zuchowski named only as its agent. Accordingly, appellant's Assignment of Error V. in Action 1 is found not well taken.

{¶ 56} In its final Assignments of Error Nos. V (Action 2) and VI (Action 1), appellant contends that the trial court erred in dismissing its violations of Ohio securities law counts and negligent misrepresentation claim against ten John Doe defendants without providing appellant with a meaningful opportunity to ascertain the identities of these defendants.

{¶ 57} Civ.R. 3(A) states that a civil action is commenced if service is obtained upon, among others, "a defendant identified by a fictitious name whose name is later corrected pursuant to Civ.R. 15(D)." Civ.R. 15(D) provides the means by which a plaintiff can amend his or her complaint once the true name of the defendant is discovered. *Hobbs v. Lopez* (1994), 96 Ohio App.3d 670, 675, 645 N.E.2d 1261. "Implicit in that rule is that a party will have adequate opportunity, through discovery or otherwise, to learn the true identity." Id.

{¶ 58} The original complaints in Action 1 and Action 2 were both filed on June 28, 2001, and the first amended complaints were filed on September 27, 2001. The RAAA, Mayor Zuchowski, and the city of Rossford did not file answers to the complaints or amended complaints. Rather, appellees filed their Civ.R. 12(B)(6) motions. Appellant proceeded, to little avail, with attempts at discovery, but their complaints were dismissed, in toto, on February 14, 2002. We must therefore conclude, as did the *Hobbs* court, that the trial court erred in dismissing the claims against the ten John Does before the requisite year for service had passed. Id. at 675–676, 645 N.E.2d 1261. Accordingly, appellant's Assignments of Error No. VI in Action 1 and Assignment of Error No. V in Action 2 are found well-taken.[1]

{¶ 59} In summary, the trial court erred in dismissing Counts 1–6 (violations of securities law claims) against the RAAA only in Action 2. It also erred in dismissing Count 7 (negligent misrepresentation claims) of the first amended complaints in both Actions 1 and 2. The court further erred in dismissing Count 8 (unjust enrichment claim) in Action 2. Last, the common pleas court erred in

1. Nevertheless, we decline to adopt appellant's proposal to order the trial court to toll the provisions of Civ.R. 3(A) and Civ.R. 15(D) for one year from the date of this judgment.

dismissing Counts 1–6. and Count 7 with regard to the ten John Doe defendants in each case. The trial court did not err in dismissing Counts 1–6 (violations of securities law claims), Count 8 (unjust enrichment), and Count 9 (contract) leveled at the city of Rossford in Action 1. Finally, the trial court did not err in dismissing Counts 1–6 (violations of securities law claims) filed against Mayor Mark Zuchowski. Therefore, the judgments of the Wood County Court of Common Pleas are affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings consistent with this judgment. The RAAA, the city of Rossford, Mark Zuchowski and Perrysburg Township are ordered to pay, in equal shares, the costs of this appeal.

Judgment affirmed in part,
reversed in part
and cause remanded.

JAMES R. SHERCK and RICHARD W. KNEPPER, JJ., concur.