[Cite as *Madison St. Fishery, L.L.C. v. Zehringer*, 2017-Ohio-992.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

Madison Street Fishery, LLC, et al.                Court of Appeals No. E-16-038

　　　　　Appellants                                Trial Court No. 2014-CV-0566

v.

James J. Zehringer, Director, Ohio
Department of Natural Resources, et al.            **DECISION AND JUDGMENT**

　　　　　Appellees                                Decided:  March 17, 2017

* * * * *

William H. Smith, Jr., for appellants.

Mike DeWine, Ohio Attorney General, Brian J. Becker and
Amanda Scheeser, Assistant Attorneys General, for appellees.

* * * * *

**SINGER, J.**

{¶ 1} Appellants, Madison Street Fishery, LLC, Reynolds Fishery, LLC, and

Szuch Fishery 12, LLC, appeal the May 16, 2016 judgment of the Erie County Court of

Common Pleas granting dismissal on the pleadings in favor of appellees, James J.

Zehringer, Director, Ohio Department of Natural Resources, and Scott Zody, Chief, Ohio Division of Wildlife (hereinafter "the Council" and "the Chief"). Finding no error on record, we affirm.

## Assignment of Error

{¶ 2} Appellants set forth the following assignment of error:

The trial court erred in granting Appellees' Civ.R. 12(B)(6) motion for failure to state a claim upon which relief can be granted, as Appellants' Complaint presented viable causes of action against Appellees with operative facts plead (sic).

## Background Facts

{¶ 3} Appellants are three commercial fishing companies who maintain licenses to harvest yellow perch from Lake Erie. On August 27, 2014, appellants filed a complaint seeking declaratory and injunctive relief, along with requests for monetary damages. The complaint alleged appellees, the Chief and Council, violated R.C. 1533.341 and that the quota management system they implemented was not equitable under R.C. 1533.341.

{¶ 4} In 2007, R.C. 1533.341 was enacted giving the Chief and Council authority to establish a quota management system to determine the maximum allowable annual taking of yellow perch (*Perca flavescens*) from Lake Erie. In furtherance of the statute, the Chief and Council promulgated regulatory standards under Ohio Adm.Code 1501:31-3-12, which is referred to as the "Quota Management System for Lake Erie Fishes."

2.

{¶ 5} On an annual basis, commercial fishermen are issued a license along with their annual allotment of yellow perch. Prior to 2008, there was a five-year catch average that was imposed for yellow perch allocation. However, since amendments to R.C. 1533.341 took effect in October 2007, each license holder retains a base share that remains unaffected by future fishing performance.

{¶ 6} The methodology to determine each license's base share of yellow perch involves totaling the reported catch and dividing it by the total catch from all licenses during 1990-2007. This methodology was established and presented by the Chief, and approved by the Council, in 2008. The Chief has used the methodology to derive an annual allocation since 2009. Despite use of the methodology for five years, appellants did not challenge its effect until filing their complaint in August 2014.

{¶ 7} On November 6, 2014, appellees filed a motion to dismiss claiming appellants failed to state a claim. In response, and to "cure deficiencies" in the original complaint, appellants filed a motion for leave to amend the complaint. On February 2, 2015, appellants filed their amended complaint. On December 16, 2015, appellees again filed a motion to dismiss for failure to state a claim.

{¶ 8} On May 16, 2016, the trial court found appellants failed to establish that the Chief violated R.C. 1533.341, that Ohio Adm.Code 1501:31-3-12 should be vacated, and that they are entitled to injunctive or declaratory relief restraining the enforcement of the statute and regulation. The court therefore concluded appellants failed to state a claim

3.

upon which relief could be granted and, as a result, granted appellees' motion to dismiss. Appellants timely appeal from this judgment.

## Standard of Review

{¶ 9} To dismiss a complaint under Civ.R. 12(B)(6), for failure to state a claim upon which relief can be granted, it must appear beyond doubt that the plaintiff can prove no set of facts entitling the party to recovery. *O'Brien v. University Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. Appellate review of a 12(B)(6) motion is de novo. *Perrysburg Township v. Rossford*, 149 Ohio App.3d 645, 2002-Ohio-5498, 778 N.E.2d 619, ¶ 13 (6th Dist.).

{¶ 10} The court may not consider material outside the complaint and must view all reasonable inferences in favor of the non-movant. *Pulizzi v. City of Sandusky*, 6th Dist. Erie No. E-03-002, 2003-Ohio-5853, ¶ 6. The court must also view the factual allegations pled as true, and if any facts set forth a viable claim it is improper to dismiss the complaint. *Caston v. Bailey*, 6th Dist. No. E-03-008, 2003-Ohio-4727, ¶ 5.

## Law and Analysis

{¶ 11} In their assignment of error, appellants attack appellees' allocation of yellow perch, claiming their complaint stated facts showing statutory and constitutional violations. Appellees contend appellants' complaint failed to state a claim.

## Administrative Powers Delegated

{¶ 12} First, we generally review for constitutional infirmities with regard to administrative powers delegated and exercised by appellees.

4.

{¶ 13} Although the General Assembly is precluded from delegating its legislative function, Ohio courts have consistently recognized that the General Assembly can delegate discretionary functions to administrative bodies or officers so the law can be applied to various sets of facts or circumstances. *See Blue Cross of N.E. Ohio v. Ratchford*, 64 Ohio St.2d 256, 259, 416 N.E.2d 614 (1980), citing *State v. Switzer*, 22 Ohio St.2d 47, 257 N.E.2d 908 (1970); *Weber v. Bd. of Health*, 148 Ohio St. 389, 74 N.E.2d 331 (1947); *Matz v. J. L. Curtis Cartage Co.*, 132 Ohio St. 271, 7 N.E.2d 220 (1937); *State v. Messenger*, 63 Ohio St. 398, 59 N.E. 105 (1900).

{¶ 14} The Supreme Court of Ohio has stated that "it is necessary that the General Assembly, in delegating authority, define the policy underlying the delegating legislation and provide standards and rules for the use of the delegated power." *See Ratchford* at 259, citing *In re Adoption of Uniform Rules & Regulations, etc.*, 169 Ohio St. 445, 160 N.E.2d 275 (1959).

{¶ 15} The statute defining standards to be applied must equate to an "intelligible principle to which the administrative officer or body must conform and further establishes a procedure whereby exercise of the discretion can be reviewed effectively." *Ratchford* at 260.

{¶ 16} R.C. 1533.341 provides, in pertinent part:

The chief of the division of wildlife with the approval of the wildlife council, in managing the Lake Erie fishery resources, *may utilize and establish by division rule a quota management system* that shall consist of

determining on a scientific basis by species and number or pounds the maximum allowable annual taking of those fishery resources or part thereof in order to prevent over exploitation of any species and assure the conservation and wise use of all species, and the determination on an equitable basis of the distribution of that maximum allowable annual taking between and within the sport and commercial fisheries. * * *

No person who holds a commercial fishing license issued under section 1533.35 of the Revised Code and who uses trap nets shall harvest a quantity of yellow perch that is in excess of the amount of yellow perch that is allocated for the person's commercial fishing license in accordance with the quota set pursuant to this section. * * * (Emphasis added.) *Id*. *See also* Ohio Adm.Code 1501:31-3-12 (establishing administrative standards).

{¶ 17} After review of R.C. 1533.341, we find the statutory standards equate to an adequate "intelligible principle" and "procedure whereby exercise of the discretion can be reviewed." *See Ratchford*, 64 Ohio St.2d at 260, 416 N.E.2d 614. This delegation of power, therefore, is constitutional.

### Administrative Authority Exercised

{¶ 18} Next, we review for constitutional infirmities with regard to the statutorily provided, administrative powers exercised by appellees.

6.

{¶ 19} Appellants argue R.C. 1533.341 mandates that the "division rule," "quota management system" must be approved by the Council on an annual basis and, therefore, appellees were in violation when no record of annual approvals was provided.

{¶ 20} Appellees contend the statute should be construed to require the Council only approve the methodology once, and from then on the Chief is to utilize the methodology in issuing an annual allocation among the licenses.

{¶ 21} The establishment of regulations based on statutory standards "can be left to the administrative body or officer if it is reasonable for the General Assembly to defer to the officer's or body's expertise." *Id.* *See also* R.C. 1531.03.

{¶ 22} Ohio Adm.Code 1501:31-3-12 provides:

(A) Commercial harvest quotas shall be determined and allocated *annually* for yellow perch (*Perca flavescens*) in the Ohio waters of lake Erie *by the chief of the division of wildlife*. Annual yellow perch quota allocations shall be pounds of yellow perch and may be allocated separately by statistical districts lake Erie yellow perch management units as defined in rule 1501:31-1-02 of the Administrative Code.

(B) *In annually determining and allocating pounds of yellow perch quotas* to commercial harvest, *the chief* shall consider and be guided by: (1) Recommendations made by the great lakes fishery commission, lake Erie committee and its technical subcommittees: (2) Other pertinent scientific, economic, and social data.

7.

(C) *In annually apportioning pounds of yellow perch quotas* within the commercial industry, *the chief* shall consider and be guided by: Other pertinent scientific, economic, and social data.

(D) Pounds of yellow perch quotas shall be apportioned *annually* within the commercial industry, by commercial fishing license, and shall be stipulated as terms and conditions of each license. Terms and conditions for any license may stipulate pounds of yellow perch quotas separately by statistical districts. The terms and conditions for any license will be established not later than February first of each year and will convey to the license holder the privilege to harvest up to the specified pounds of yellow perch. Preliminary terms and conditions *annually* specified on February first for each license will not be reduced during the calendar year. Terms and conditions for pounds of yellow perch quotas may be increased for any license and all such increases will be conveyed in writing *by the chief* to individual license holders not later than May first of *each year*. (Emphasis added.) *Id.*

{¶ 23} In this case, we agree with appellees' interpretation of R.C. 1533.341 and find that the statute does not require the methodology or quota system be renewed or reapproved by the Council annually. Based on our review of the statute, the Council must only approve the methodology or quota system once. *See* R.C. 1533.341. Moreover, based on our review of the division rule, only "the chief" is expressly

8.

mandated to act "annually."  *See* Ohio Adm.Code 1501:31-3-12.  In that regard, the record supports that the Chief actually established the allocation methodology, with the approval of the Council, in 2008.  This methodology has been applied annually since 2009.

{¶ 24} Thus, we find no error in appellees' exercise of administrative authority.

### Constitutionality of Police Power Exercised

{¶ 25} We now address appellants' claim that closure of the western basin and redistribution of the yellow perch quota equate to a unilateral, unconstitutional taking of protected property.  Appellees contend no unconstitutional taking occurred because regulation and control of wildlife is within their police power.

{¶ 26} "The right of the state, in the exercise of its police power, to regulate and control the taking of fish in all the public waters within its jurisdiction, is a right so universally  recognized and so uniformly affirmed, by both text-writers and courts, that it may not now be questioned."  *State v. Hanlon*, 77 Ohio St. 19, 27-28, 82 N.E. 662 (1907).

{¶ 27} "The ownership of fish and game, so far as they are capable of ownership, until reduced to actual possession, is in the state, and their protection and preservation by the state has always been regarded and treated as within the proper domain of its police power[.]" *Id*; *see also State v. Fisheries*, 6th Dist. Ottawa No. OT-80-29, 1981 Ohio App. LEXIS 13249, *12 (Aug. 28, 1981) (explaining that this individual property right is subject to regulation where assuring fish maturation and fish reproduction are the goals).

9.

**{¶ 28}** Here, appellees have justified the governance of the yellow perch on record and for purposes of this appeal. More specifically, appellees assert closing the basin and redistributing the quota were done in effort to regulate the taking of fish from Ohio waters. This preservation is consistent with R.C. 1533.341, which explicitly states the legislative interest is "to prevent over exploitation of any species and assure the conservation and wise use of all species." Therefore, we find no unconstitutional, unreasonable or arbitrary action with regard to appellees' exercise of police power.

### Fairness of Authority Exercised

**{¶ 29}** Lastly, we address appellants' claim that the quota management system adopted is inequitable. Appellees contend appellants state no claim with this argument, however, also argue the system is equitable because it "is free of incentives, guarantees quota to each license every year, and recognizes the past catch history for each license."

**{¶ 30}** "The political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of the legislature or the confines of the Executive Branch." *See Derolph v. State*, 78 Ohio St.3d 193, 266, 677 N.E.2d 733 (1997) (Moyer, J., dissenting), citing *Japan Whaling Assn. v. Am. Cetacean Soc.*, 478 U.S. 221, 106 S.Ct. 2860 (1986).

**{¶ 31}** In this case, to determine whether the specific yellow perch quotas allotted were equitable, beyond examining the statutory and constitutional challenges addressed

10.

above, requires this court to review policy choices and value determinations committed for resolution to the legislature and executive branches.

{¶ 32} Accordingly, in viewing the record, pleadings, and all reasonable inferences drawn therefrom in favor of appellants, this court confirms no viable claim was asserted below. We find no merit in appellants' arguments and the assignment of error is not well-taken.

### Conclusion

{¶ 33} The judgment of the Erie County Court of Common Pleas is affirmed. Appellants are ordered to pay costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

_____
JUDGE

Thomas J. Osowik, J. _____

_____

James D. Jensen, P.J. _____       JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.