**PERRYSBURG TOWNSHIP, Appellant and Cross–Appellee,**

v.

**ROSSFORD ARENA AMPHITHEATER AUTHORITY,**
**Appellee and Cross–Appellant.**

[Cite as *Perrysburg Twp. v. Rossford Arena Amphitheater Auth.,* 175 Ohio App.3d 549, 2008-Ohio-363.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–07–008.

Decided Jan. 18, 2008.

550

John P. Donahue, for appellant and cross-appellee.

Peter R. Silverman, Michael G. Sanderson, and Michael J. Podolsky, for appellee and cross-appellant.

Osowik, Judge.

{¶ 1} This is an appeal from a judgment of the Wood County Court of Common Pleas, in which the trial court granted summary judgment to appellee and cross-appellant, the Rossford Arena Amphitheater Authority ("RAAA"), and dismissed a complaint filed by appellant and cross-appellee, Perrysburg Township, in an action to collect an outstanding loan from the township to the RAAA in the amount of $5 million. On appeal, appellant and cross-appellee, the township, sets forth the following three assignments of error:

{¶ 2} "I. The trial court's entry of summary judgment, in favor of appellee on the June 29, 1999 note sale claim, was erroneous as a matter of law.

{¶ 3} "II. The trial court abused its discretion by prohibiting appellant from conducting discovery on the 'offer to sell' transaction.

{¶ 4} "III. The trial court erroneously dismissed claims that were not the subject-matter of summary judgment proceedings."

{¶ 5} In addition, appellee and cross-appellant, the RAAA, sets forth the following cross-assignment of error: [1]

{¶ 6} "The trial court erred in ruling on summary judgment that the Intergovernmental Agreement is a security that the RAAA issued to Perrysburg Township. Genuine issues of material fact exist as to whether the note is a security under the *Reves* test and as to which entity is the issuer of the Intergovernmental Agreement."

{¶ 7} The undisputed, relevant facts are as follows. The township is a governmental entity formed pursuant to R.C. 503.01. Appellee and cross-appellant, the RAAA, is a nonprofit corporation authorized and formed by the city of Rossford, Ohio, for the express purpose of creating a joint economic-development authority in conjunction with the township. In the ordinance authorizing formation of the RAAA, the city stated the purpose of the joint endeavor was "to promote economic growth and development in the City of Rossford."

{¶ 8} On May 17, 1999, Mark Zuchowski, who was at the time both a trustee of the RAAA and the mayor of Rossford, asked the township trustees to approve a revenue bond through which the RAAA would receive $5 million from the township. The request was made at a regularly scheduled trustees' meeting. The bond was to be purchased with public funds and used to construct a sports arena and entertainment amphitheater. As a result of that meeting, a bond agreement was drafted. However, at their next meeting on June 29, 1999, the township trustees and representatives of the RAAA executed an "Intergovernmental Agreement" instead of approving and adopting the revenue bond.

{¶ 9} Pursuant to the terms of the Intergovernmental Agreement, the township agreed to loan $5 million to the Port Authority, which, in turn, assigned the money to the RAAA. The RAAA was then obligated to repay the loan, at eight percent interest, back to the Port Authority over the next two years. Ultimately, the Port Authority was to repay the loan to the township. In spite of the parties' good intentions, the facility was never built, and the money was never repaid to the township.

{¶ 10} On June 28, 2001, the township filed a complaint against the RAAA and several other John Doe defendants, in which they set forth claims of, among other things, securities violations. Specifically, the township alleged that it had executed the agreement based on false and/or misleading statements as to both the viability of the amphitheater project and the prospect of the RAAA repaying the

---

1. A second cross-assignment of error was set forth in the RAAA's brief; however, it was withdrawn in the RAAA's reply on cross-appeal and therefore need not be considered by this court.

$5 million loan. In addition, the complaint alleged that the promissory note, which was the subject of the agreement, constituted an unregistered security, in violation of various provisions of R.C. Chapter 1707. On that same day, the township made a request for the production of public records by the RAAA, which the township claimed were relevant to the allegations made in the complaint.

{¶ 11} On August 23, 2001, the RAAA filed a motion to dismiss the complaint pursuant to Civ.R. 12(B)(6). In support, the RAAA argued that the promissory note was not a security, since it was evidence of only a "simple loan," and was not an investment for profit by the township. The RAAA further argued that even if the note was deemed to be a security, R.C. 1707.02(B) generally exempts securities issued by state and local governments and political subdivisions thereof from the registration process. The township filed a response and a first amended complaint on September 27, 2001, in which it added a claim for breach of contract. In response, the RAAA renewed its motion to dismiss all counts in the complaint except the breach-of-contract claim.

{¶ 12} On January 28, 2002, the township filed a motion in which it asked the trial court to compel the RAAA to produce the public records requested on June 28, 2001. In support, the township stated that without those records, it was unable to conduct meaningful discovery. The township also asked the trial court for an expeditious determination of the motion to dismiss, so that the case could proceed in a timely manner.

{¶ 13} On February 14, 2002, the trial court filed a judgment entry in which it found that the promissory note was not a security. The trial court further found that as to all counts in the complaint except the breach-of-contract claim, the township could "prove no set of facts that would entitle it to relief as a matter of law." Accordingly, the motion to dismiss was granted.

{¶ 14} A timely notice of appeal was filed in this court ("first appeal"). On October 11, 2002, we reversed the trial court's determination and remanded the case to the trial court. *Perrysburg Twp. v. Rossford* (2002), 149 Ohio App.3d 645, 778 N.E.2d 619. A timely appeal and cross-appeal were then filed in the Ohio Supreme Court.

{¶ 15} On May 24, 2002, while the first appeal was pending in this court, the township filed a second amended complaint, in which it substituted Recreational Development & Consulting, Inc. ("RDC") and Richard E. Kavanaugh, d.b.a. Richard E. Kavanaugh & Associates, for the John Doe defendants. On June 6, 2003, the RAAA filed a third-party complaint against Stifel, Nicolaus & Company, Inc. ("Stifel") and James J. Lahay. The third-party complaint stated that as financial advisors to the RAAA and Zuchowski, Stifel and Lahay were responsible for any misinformation that may have been given to the township by Zuchowski

that induced the township to enter into the agreement. In response, Stifel and Lahay filed a motion to dismiss the third-party complaint, which the trial court denied on November 10, 2003.

{¶ 16} On September 8, 2004, the Ohio Supreme Court found that in determining whether a particular note is in fact a security, courts should start with the presumption that every note is a security. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 12 (*"Perrysburg Twp. I"*), citing *Reves v. Ernst & Young* (1990), 494 U.S. 56, 66, 110 S.Ct. 945, 108 L.Ed.2d 47. After considering the record, which consisted only of the pleadings, the Ohio Supreme Court determined that the RAAA presented insufficient evidence to overcome that presumption and, therefore, the Civ.R. 12(B)(6) motion to dismiss should not have been granted by the trial court. Id., ¶ 19. Ultimately, this court's decision on appeal was upheld, and the case was remanded to the trial court. Id.

{¶ 17} On October 6, 2005, the township filed a second motion to compel the RAAA to answer its request for admissions and to provide nonevasive responses to its interrogatories, to which the RAAA responded on October 19, 2005. On January 2, 2006, the trial court found that the township's request for admissions related to the draft bond considered by the township trustees on May 19, 1999, and, therefore, was a "back-door attempt to add claims not previously raised in the Complaint." Accordingly, the trial court denied the township's motion to compel. On January 9, 2006, the township filed a motion for reconsideration, which was eventually denied on December 29, 2006.

{¶ 18} On June 23, 2006, the township filed a motion for summary judgment and a memorandum in support, in which it argued that pursuant to R.C. 1707.01, the note was presumptively a security. The township also argued that the Ohio Supreme Court had found that the agreement was a security and, therefore, that the issue became the law of the case. The township further argued that the promissory note had been sold to the township in violation of R.C. 1707.44(C)(1), which states that all securities that are not exempt must be registered at the time of sale. The township concluded that because the note was an unregistered security, the township was entitled to rescission of the sale and repayment of the $5 million loan by the RAAA as a matter of law.

{¶ 19} The township's summary judgment motion was supported by the affidavit of John Hrosko, Perrysburg township's administrator; copies of the unexecuted bond and bond agreement approved on May 17, 1999, and the resolution authorizing the purchase of the bond; a certificate issued by the Ohio Division of Securities showing that the promissory note was not registered with the state of Ohio; a copy of the agreement authorizing the township, the Port

Authority, Rossford, and the RAAA to execute the $5 million promissory note; and transcripts of the township meetings held on May 17 and June 29, 1999.

{¶ 20} In his affidavit, Hrosko stated that the township approved the original bond measure on May 17, 1999; however, the bond was later exchanged for a $5 million promissory note. Hrosko further stated that the RAAA never repaid the $5 million either to the Port Authority or the township.

{¶ 21} Transcripts of the township's meetings show that at the May 17, 1999 township meeting Phil Dombey, the RAAA's attorney, stated that the bond would be repaid with eight percent interest—double the current interest rate for bank CDs. Dombey further stated that the township should invest in the amphitheater project because "sometimes you have to spend money to make money," and "this is the catalyst that brings the people," and that the biggest risk of the project lay in the possibility that it would not bring new businesses into the township and/or Rossford. Zuchowski stated at the May 17 meeting that the arena/amphitheater would bring an estimated 1.7 million people per year to the area, increasing property values and relieving the property tax burden on homeowners.

{¶ 22} At the meeting on June 29, 1999, Zuchowski stated that "this whole transaction is an investment, and I think that's important." "It's a type of investment you're putting back into the community where you should get paid back in other ways." Zuchowski also stated that the banks would continue to roll over the obligation on the note if it was not paid. He said that "we're making it [the loan] under good terms [eight percent] to make it a good investment for [the township.]"

{¶ 23} Other participants at the June 29 meeting included Hrosko and Township Trustee Richard Britten, who asked whether the township could potentially be liable for more than the original $5 million if it invested in the project. Dombey replied that the township could be liable "in theory, but the risk is extremely small." Trustee Robert Miller stated that the amphitheater project should spur growth in the surrounding area, and the township would benefit from sharing the increased tax revenues with Rossford.

{¶ 24} On June 30, 2006, the RAAA filed a response in opposition to the township's motion for summary judgment and a cross-motion for partial summary judgment. In support of both its response to and cross-motion for summary judgment, the RAAA argued that the agreement was not a security and had not been determined to be so by the Ohio Supreme Court. Alternatively, the RAAA argued that even if the agreement was a security, it was exempt from registration requirements pursuant to R.C. 1707.02(G), which provides an exemption from registration in cases where the security was "not offered directly or indirectly for sale to the public."

{¶ 25} Attached to the RAAA's response and cross-motion for summary judgment were a verified copy of the agreement and a copy of the second amended complaint. In addition, attached to the cross-motion was Zuchowski's affidavit, in which he stated that (1) the township entered into the agreement to fund the development of a sports arena and amphitheater, (2) the agreement was entered into "only with Perrysburg Township and [was] not offered to any other third parties," (3) the RAAA believed that the township entered into the agreement as an "investment," (4) the $5 million loan was never repaid to the township by the RAAA, and (5) the RAAA did not attempt to induce any parties other than the Port Authority and the township to enter into the agreement.

{¶ 26} On August 1, 2006, the township filed a response in support of its summary judgment motion and in opposition to the RAAA's cross-motion for partial summary judgment. On August 21, 2006, the RAAA filed a reply, in which it asserted that the agreement was exempt from registration pursuant to R.C. 1707.02(G), because it had been offered for sale to "fewer than ten people." In addition, the RAAA argued that the issue of whether the agreement was a security was a question of fact for a jury to determine and even if the agreement was determined to be a security, it was exempt from registration requirements. On November 25, 2006, the township filed a surreply.

{¶ 27} On December 19, 2006, the trial court filed a judgment entry in which it found, as a matter of law, that "the note at issue is a security," based on the "unrebutted legislative presumption that all notes are securities" and the Ohio Supreme Court's analysis of the "family resemblance test" in *Perrysburg Twp. I.* However, the trial court further found that the note was exempt from registration pursuant to R.C. 1707.02(G). Accordingly, the trial court denied the township's motion for summary judgment, granted partial summary judgment to the RAAA, and dismissed those counts of the complaint that were "premised upon violation of Ohio Securities Laws for the alleged sale of a nonregistered security." Accordingly, the trial court dismissed Counts 1, 2, and 5 of the second amended complaint.[2] A timely notice of appeal was filed in this court on February 7, 2007.

{¶ 28} In its cross-assignment of error, the RAAA asserts that the trial court erred by finding that the $5 million promissory note was a security as a matter of law. In support, the RAAA argues that it presented enough evidence to at least raise an issue of fact as to whether the $5 million note is a security. Alternatively, the RAAA argues that even if the note is a security, it is nevertheless exempt from registration requirements pursuant to R.C. 1707.02(G). Finally, the RAAA

---

2. The remaining counts were voluntarily dismissed without prejudice on January 10, 2007, making the trial court's order final and appealable.

asserts that an issue of fact remains as to whether the RAAA or the Port Authority was the issuer of the promissory note.

{¶ 29} An appellate court reviews a trial court's granting of summary judgment de novo, applying the same standard used by the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198; *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Accordingly, summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).

{¶ 30} As to the RAAA's first argument, the purpose of R.C. Chapter 1707, otherwise known as the Ohio Securities Act, is "to prevent the fraudulent exploitation of the investing public through the sale of securities." *Perrysburg Twp. I*, ¶ 9, citing *In re Columbus Skyline Secs., Inc.* (1996), 74 Ohio St.3d 495, 660 N.E.2d 427. "This goal is best accomplished through a broad definition of 'securities.'" Id.; *Reves v. Ernst & Young* (1990), 494 U.S. 56, 60–61, 110 S.Ct. 945, 108 L.Ed.2d 47. However, the determination as to what debt instruments are securities is to be made on a case-by-case basis. *State v. Silberberg* (1956), 166 Ohio St. 101, 104, 1 O.O.2d 221, 139 N.E.2d 342.

{¶ 31} In determining whether a particular note is, in fact, a security, courts should start with the presumption that every note is a security. *Perrysburg Twp. I*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 12, citing *Reves v. Ernst & Young*, supra. However, courts should also recognize that "certain instruments that are commonly called 'notes' are not securities." Id. Those instruments include "'"the note delivered in consumer financing, the note secured by a mortgage on a home, the short-term note secured by a lien on a small business or some of its assets, the note evidencing a 'character' loan to a bank customer, short-term notes secured by an assignment of accounts receivable, or a note which simply formalizes an open-account debt incurred in the ordinary course of business (particularly if, as in the case of the customer of a broker, it is collateralized).'''" Id., ¶ 12, quoting *Reves*, 494 U.S. at 65, 110 S.Ct. 945, 108 L.Ed.2d 47, quoting *Exchange Natl. Bank of Chicago v. Touche, Ross & Co.* (C.A.2, 1976), 544 F.2d 1126, 1138.

{¶ 32} In "determin[ing] whether the note in question closely resembles [any of] the notes from the above list that are not securities," courts should employ the four-part family-resemblance test set forth in *Reves*. Id. at ¶ 13. "First, the transaction is examined to determine the motivations of the parties entering into the agreement. Second, the plan of distribution of the instrument is examined. Third, the reasonable expectations of the investing public are

considered. And finally, it is determined whether there are any factors that reduce the risk of the instrument, thereby rendering securities protections unnecessary." Id., ¶ 14, citing *Reves,* 494 U.S. at 66–67, 110 S.Ct. 945, 108 L.Ed.2d 47.

{¶ 33} Testimony was presented at the township meetings on both May 17 and June 29, 1999, as to the benefits of the township loaning $5 million to the RAAA. At those times, the trustees and representatives of the RAAA referred to the $5 million loan as an "investment" that would earn eight percent interest over two years' time. However, Zuchowski and Dombey both stated that the township also would benefit from the commercial growth generated by the project, in the form of increased property and income taxes. When Township Trustee Britten expressed concern over whether the loan would be repaid, Dombey stated that the risk was "extremely small," and Zuchowski stated that banks were willing to roll over the obligation if necessary. Township Trustee Miller stated that any risk was offset by the tremendous potential for economic growth due to the arena/amphitheater project.

{¶ 34} Upon consideration of the entire record, we find that both parties referred to the $5 million loan as an "investment" and not a short-term, collateralized business loan. The loan was clearly intended by all parties as seed money that would ultimately generate business development and more tax revenue for Perrysburg Township. In addition, the potential risk to the township, while stated as unlikely at the time, was potentially great. Accordingly, we agree with the trial court that the evidence presented, even if construed most strongly in favor of the RAAA, demonstrates that the $5 million promissory note is a security as a matter of law. Accordingly, the first argument in the RAAA's cross-assignment of error is without merit.

{¶ 35} The alternative argument presented in the RAAA's cross-assignment of error is that even if the note is a security, it is nevertheless exempt from registration. Similarly, in its first assignment of error, the township asserts that although the trial court correctly concluded that the note was a security, it erroneously determined that it was exempt from the registration requirements of R.C. 1707.44(C). Because these two issues are related, we will address them together.

{¶ 36} As set forth above, we must review the trial court's granting of summary judgment de novo. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198; *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. In Ohio, the sale of unregistered, nonexempt securities is prohibited by R.C. 1707.44(C). *First Financial Servs., Inc. v. Cross Tabernacle Deliverance Church, Inc.,* 10th Dist. No. 06AP–404, 2007-Ohio-

4274, 2007 WL 2372355, ¶ 23. Pursuant to R.C. 1707.43, the sale of an unregistered security, made in violation of R.C. Chapter 1707, is voidable at the election of the purchaser. *Pencheff v. Adams* (1983), 5 Ohio St.3d 153, 5 OBR 318, 449 N.E.2d 1277, syllabus.

{¶ 37} R.C. 1707.02(I) states, "Any security, *except* notes, bonds, debentures, or other evidences of indebtedness or of promises or agreements to pay money, which is issued by a person, corporation, or association organized not for profit, * * * is exempt [from registration] * * *." (Emphasis added.) However, pursuant to R.C. 1707.02(G), "[c]ommercial paper and promissory notes are exempt [from registration] when they are not offered directly or indirectly for sale to the public."

{¶ 38} It is undisputed that the RAAA is a not-for-profit corporation that issued a promissory note in return for a $5 million loan from the township. Accordingly, on appeal, we must determine (1) whether the exemption set forth in R.C. 1707.02(G) is applicable to promissory notes issued by not-for-profit entities and (2) if the exemption is potentially applicable, whether reasonable minds can only conclude that the $5 million promissory note at issue in this case is exempt from registration.

{¶ 39} In interpreting the language employed by the legislature in R.C. 1707.02(G) and (I), we must keep in mind that "when the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for an appellate court to apply the rules of statutory interpretation." *State v. Stanovich*, 173 Ohio App.3d 304, 2007-Ohio-4234, 878 N.E.2d 641, ¶ 13, citing *State v. Siferd*, 151 Ohio App.3d 103, 117, 2002-Ohio-6801, 783 N.E.2d 591. However, if a statute is subject to more than one interpretation, "a court * * * may invoke rules of statutory construction in order to arrive at the legislative intent.'" Id. In so doing, courts are to "interpret statutory terms and phrases according to their common and ordinary or, if applicable, technical, usage." Id. Whenever possible, well-recognized principles of statutory construction requires us to read "all statutes pertaining to the same general subject matter * * * in pari materia," and to construe potentially conflicting statutory provisions so as to give effect to both. *Zweber v. Montgomery Cty. Bd. of Elections* (Apr. 25, 2002), 2d Dist. No. 19305, 2002 WL 857857.

{¶ 40} After reviewing the language employed in R.C. 1707.02(G) and (I) according to their plain and ordinary meaning, and interpreting them in a way that gives effect to both statutory provisions, we conclude that the Ohio legislature intended to require registration of promissory notes issued by not-for-profit entities, unless the note fits into the exemption provided by R.C. 1707.02(G). Having found that the $5 million promissory note in this case is potentially exempt from the required registration for promissory notes that are issued by

not-for-profit entities, we now turn to the issue of whether the note qualifies for that exemption.

{¶ 41} As set forth above, R.C. 1707.02(G) states: "Commercial paper and promissory notes are exempt [from registration] when they are not offered directly or indirectly for sale to the public." The phrase "sold to the public" is further addressed by Ohio Adm.Code 1301:6–3–02(D), which provides:

{¶ 42} "(1) Pursuant to division (G) of section 1707.02 of the Revised Code, commercial paper and promissory notes are not offered for sale directly or indirectly to the public where their sale is restricted to:

{¶ 43} " * * *

{¶ 44} "(d) Sales by the issuer of the security to not more than ten persons in this state during [a] twelve month period, provided that:

{¶ 45} "(i) The issuer reasonably believes after reasonable investigation that the person is purchasing for investment;

{¶ 46} "(ii) No advertisement, article, notice, or other communication shall be published or broadcast or caused to be published or broadcast by the issuer in connection with the sale other than an offering circular or other communication delivered by the issuer to selected individuals;

{¶ 47} "(iii) The aggregate commission, discount, and other remuneration paid or given directly or indirectly for sale of the commercial paper and promissory notes of the issuer, excluding legal, accounting and printing costs, does not exceed ten percent of the initial offering price of the commercial paper and promissory notes; and

{¶ 48} "(iv) Any commission, discount, or other remuneration for sales of commercial paper and promissory notes in reliance on this exemption in this state is paid or given only to dealers or salesmen licensed pursuant to Chapter 1707. of the Revised Code."

{¶ 49} The township admits, for purposes of this appeal, that assuming R.C. 1707.02(G) potentially applies, the RAAA "met the requirements of subsections (i), (ii), (iii), and (iv) [of Ohio Adm.Code 1301:6–3–02(D)(1)(d) ] in the summary judgment proceedings below." Nevertheless, the township asserts that "R.C. 1707.02(G) does not provide an exemption to any issuer of any note that is sold to a public entity." Specifically, the township argues that (1) the trial court erred by applying Ohio Adm.Code 1301:6–3–02(D)(1)(d), because the rule is in absolute derogation of it [the statute's] express terms and (2) the township is a "public entity" and, therefore, cannot be a "person" as contemplated by Ohio Adm.Code 1301:6–3–02(D)(1)(d).

{¶ 50} As to the township's first argument, the primary purpose of administrative rules is "'to facilitate the implementation of legislative policy.'" *Knutty v. Wallace* (1992), 84 Ohio App.3d 623, 627, 617 N.E.2d 783, quoting *Carroll v. Dept. of Adm. Serv.* (1983), 10 Ohio App.3d 108, 10 OBR 132, 460 N.E.2d 704, paragraph one of the syllabus. "[A] basic limitation on this authority is that an administrative agency may not legislate by enacting rules which are in excess of legislative policy, or which conflict with the enabling statute." Id., citing *English v. Koster* (1980) 61 Ohio St.2d 17, 18, 15 O.O.3d 9, 399 N.E.2d 72. In this case, the promulgation of Ohio Adm.Code 1301:6–3–02(D) was generally authorized by R.C. 1707.20(A), which provides:

{¶ 51} "The division of securities may adopt, amend, and rescind such rules, forms, and orders as are necessary to carry out sections 1707.01 to 1707.45 of the Revised Code, including rules * * * defining any terms, * * * insofar as the definitions are not inconsistent with these sections."

{¶ 52} On consideration of the foregoing, and our previous determination that the exemption set forth in R.C. 1707.02(G) is potentially available in this case, we find that Ohio Adm.Code 1301:6–3–02(D), which merely amplifies and defines that exemption, is neither in excess of the policies behind the enabling statute under which it was promulgated nor in conflict with the legislative scheme of which it is a part. Accordingly, the township's first argument is without merit.

{¶ 53} As to the township's second argument, R.C. 1707.01(D) defines a "person" as "a natural person, firm, partnership, limited partnership, partnership association, syndicate, joint-stock company, unincorporated association, trust or trustee except where the trust was created or the trustee designated by law or judicial authority or by a will, and a corporation or limited liability company organized under the laws of any state, any foreign government, or any political subdivision of a state or foreign government."

{¶ 54} Similarly, R.C. 1.59(C) states that, unless otherwise defined elsewhere in the Ohio Revised Code, the term "person" includes "an individual, corporation, business trust, estate, trust, partnership, and association."

{¶ 55} Ohio courts have long recognized that townships are at least "quasi-corporations," which fall somewhere between a corporation and an association. *Zents v. Summit Cty. Bd. of Commrs.* (1984), 9 Ohio St.3d 204, 206, 9 OBR 516, 459 N.E.2d 881; *State ex rel. Saxbe v. Alexander* (1959), 168 Ohio St. 404, 406, 155 N.E.2d 678; *Harrison Tp. (TR.) v. Harrison Tp.* (C.P.1907), 18 Ohio Dec. 446, 1907 WL 1291. Finally, R.C. 503.01 describes a township as "a body politic and corporate, for the purpose of enjoying and exercising the rights and privileges conferred upon it by law [which] may sue and be sued, plead and be impleaded, and receive and hold real estate by devise or deed, or receive and hold personal property for the benefit of the township for any useful purpose."

{¶ 56} On consideration of the foregoing, we find that the statutory definition of "person" set forth in R.C. 1707.01(D) encompasses both corporations and associations and is, therefore, broad enough to include the township. The township's second argument is without merit.

{¶ 57} This court has reviewed the entire record that was before the trial court and, upon consideration thereof, finds as a matter of law that (1) the $5 million note is a security, (2) Perrysburg Township is a "person" within the scope of R.C. 1707.01(D), and (3) the $5 million promissory note is therefore exempt from registration pursuant to R.C. 1707.02(G), as amplified by Ohio Adm.Code 1301:6–3–02(D)(1)(d). Accordingly, the township's first assignment of error is not well taken.

{¶ 58} On consideration whereof, this court finds further that there remains no other genuine issue of material fact, and after considering the evidence presented most strongly in favor of the township, we find that the RAAA is entitled to partial summary judgment as a matter of law. However, because the note is exempt from registration, regardless of whether or not it is a security, and regardless of which entity was the issuer, the RAAA's cross-assignment of error is moot and therefore not well taken.

{¶ 59} In its second assignment of error, the township asserts that the trial court abused its discretion when it refused to allow the township to conduct discovery on the "offer to sell" transactions set forth in Counts 1 and 2 of the second amended complaint. In support, the township argues that discovery should have been allowed, since an "offer to sell" qualifies as a sale, and every sale of a nonregistered, nonexempt security is voidable at the election of the purchaser.

{¶ 60} The granting or denial of a discovery motion will not be overturned on appeal absent a finding that the trial court abused its discretion. *Schneider v. Schneider* (Mar. 29, 1999), 12th Dist. Nos. CA98–03–007 and CA98–03–009, 1999 WL 173000, citing *State ex rel Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 57, 63 O.O.2d 88, 295 N.E.2d 659. "Abuse of discretion" connotes more than a mere error of law or judgment, instead requiring a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 61} The township sought discovery as to claims set forth in Counts 1 and 2 of the second amended complaint. Count 1 reads as follows:

{¶ 62} "On May 17, 1999, and on June 29, 1999, Zuchowski attended regularly scheduled meetings of the Township. Acting in his official capacity on behalf of the City and or the RAAA, as a duly appointed agent, Zuchowski offered to sell, and on June 29, 1999 he did sell the Township a security. The RAAA issued the

security or transaction described above, which was not exempt from registration under R.C. 1707.02, 1707.03, 1707.04 or 1707.34 and was not registered by any defendant as required by Ohio law."

{¶ 63} Similarly, Count 2 of the second amended complaint states:

{¶ 64} "Acting in his official capacity on behalf of the City and or the RAAA, as a duly appointed agent, Zuchowski, knowingly and intentionally, offered to sell, and on June 29, 1999 did, knowingly and intentionally, sell the Township a security. The RAAA issued the security or transaction described above, which was not exempt from registration under R.C. 1707.02, 1707.03, 1707.04 or 1707.34 and was not registered by any defendant as required by Ohio law."

{¶ 65} In its motion to compel, the township sought admissions from the RAAA relative to both the bond issue that was discussed at the trustees' meeting on May 17, 1999, and the transaction that occurred on June 19, 1999, when the bond was changed to a promissory note. In reviewing the township's motion to compel, the trial court determined that the township was essentially making a "back-door attempt" to raise claims relative to the bond that were not set forth in the second amended complaint. Accordingly, the discovery motion was denied.

{¶ 66} The version of R.C. 1707.44(C)(1) that was in effect in 1999 prohibited any person from knowingly and intentionally selling or aiding in the sale of an unregistered, nonexempt security.[3] In its appellate brief, the township claims that it was entitled to discovery on all issues leading up to the execution of the $5 million promissory note because the pleadings state that "appellee [the RAAA] 'offered to sell' appellant an unregistered, non-exempt security." This argument is flawed, for several reasons. First, as set forth above, we have already determined that the promissory note is a security that is exempt from registration pursuant to R.C. 1707.02(G). This determination prevents the rescission remedy sought by the township pursuant to R.C. 1707.43. Second, the promissory note being exempt from registration, the issue of whether preceding discussions of either the note or the bond issue constituted an offer to sell an unregistered, nonexempt security, as contemplated by R.C. 1707.44(C), has become moot.

{¶ 67} On consideration of the foregoing, we find that the trial court's refusal to grant the motion to compel discovery on matters related to the offer to sell was not arbitrary, unreasonable, or unconscionable. Accordingly, the trial court did

---

3. 1998 Am.Sub.H.B. No. 695, 147 Ohio Laws, Part III, 5380, 5422. In 2002, R.C. 1707.44(C) was amended to provide that "[n]o person shall knowingly sell, cause to be sold, offer for sale, or cause to be offered for sale" any nonregistered, nonexempt security. 2002 Am.Sub.S.B. No. 138, 149 Ohio Laws, Part I, 1291, 1334.

not abuse its discretion, and the township's second assignment of error is not well taken.

{¶ 68} In its third assignment of error, the township asserts that the trial court erred by completely dismissing Count 5 of the second amended complaint. In support, the township argues that the trial court's authority to dismiss Count 5 did not extend to "the aiding and abetting claims as they related to Counts Three and Four [of the complaint], because these counts were not the subject matter of summary judgment proceedings."

{¶ 69} Count 3 of the second amended complaint set forth a claim against the RAAA pursuant to R.C. 1707.44(B) and 1707.41. Pursuant to R.C. 1707.44(B), sellers of securities are forbidden to "knowingly make or cause to be made any false representation concerning a material and relevant fact." Pursuant to R.C. 1707.41, sellers who misrepresent securities are subject to civil remedies, including damages for losses incurred as a result of the seller's fraudulent conduct. Similarly, Count 4 set forth a claim for violation of R.C. 1707.44(G), which states: "No person in purchasing or selling securities shall knowingly engage in any act or practice that is, in this chapter, declared illegal, defined as fraudulent, or prohibited."

{¶ 70} In Count 5 of the second amended complaint, the township asserted that the RAAA "participat[ed] in the sale and aid[ed] the issuer" of a security in violation of R.C. 1707.43.[4] As set forth above, R.C. 1707.43(A) provides the remedy of rescission, at the purchaser's election, for violations of R.C. Chapter 1707. In addition, R.C. 1707.43(B) sets forth a two-year statute of limitation on such actions, and R.C. 1707.43(C) prohibits the bringing of an action for rescission in cases in which the seller, or a person who aided or abetted the seller, has made a timely offer to take back the transaction and issue a refund.

{¶ 71} On consideration of the foregoing, we find that the broad language used in R.C. 1707.43 is intended to provide remedies for all violations of R.C. Chapter 1707. Accordingly, the trial court erred by dismissing Count 5, as it relates to the claims brought in the third and fourth counts of the second amended complaint. The township's third assignment of error is well taken in part and not well taken in part.

{¶ 72} The judgment of the Wood County Court of Common Pleas is hereby affirmed in part and reversed in part. The case is remanded to the trial court for further proceedings consistent with this decision and judgment entry.

---

4. Count five does not state who, or what entity, is the actual issuer of the security. However, for the reasons stated herein, we find that issue to be moot.

{¶ 73} Appellee, the RAAA, is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.

Judgment affirmed in part
and reversed in part.

PIETRYKOWSKI, P.J., and HANDWORK, J., concur.